IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CARLA HESTER | § | |
| v. | § | CIVIL ACTION NO.  6:04cv36 |
| GRAHAM, BRIGHT & SMITH, ET AL. | § | |

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE ON
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

The above-styled lawsuit was filed on January 28, 2004.  The case was referred to the undersigned for all pretrial matters in accordance with 28 U.S.C. § 636(b)(1).  On March 11, 2005, Plaintiff filed a Motion for Partial Summary Judgment (docket #50).  To date, no response has been filed by the defendants.  For the reasons assigned below, the undersigned finds that the Motion for Partial Summary Judgment should be granted.

*Background*

In the complaint, Plaintiff alleges that Defendants Graham, Bright & Smith and R. Spencer Shytles filed an action to collect upon a consumer debt in a distant forum in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692i, and that Defendant Aqua Finance, Inc. ("Aqua Finance"), is similarly liable for distant forum abuse under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.46(b)(23).  Plaintiff complains that

Defendants filed a lawsuit against her in a Dallas County Court-at-Law to collect an unpaid debt resulting from a retail installment contract entered into between Plaintiff and Aqua Finance.

Defendants Graham, Bright & Smith ("GBS") and R. Spencer Shytles ("Shytles"), allegedly acting as debt collectors, filed the lawsuit for Aqua Finance. The retail installment contract was executed in Tarrant County, Texas. Plaintiff, who resides in Smith County, Texas, complains that the state court lawsuit was not filed in the county where the contract was signed or in the county where she resided when the lawsuit was filed.

On March 11, 2005, Plaintiff filed her motion seeking a partial summary judgment on the issue of liability, leaving the issues of damages and equitable relief for trial and the issue of attorney's fees for post-judgment adjudication. No response has been filed by Defendants.[1] Accordingly, the undersigned assumes that Defendants have no opposition to the motion for partial summary judgment. Local Rule CV-7(d).

*Facts*

In her motion for partial summary judgment, Plaintiff set forth a Statement of Material Facts and attached proper summary judgment evidence. Pursuant to Local Rule CV-56(c), "[i]n resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion." Defendants did not file a response in opposition to the motion for partial summary judgment, leaving Plaintiff's asserted facts uncontroverted. The facts asserted in Plaintiff's

---

[1] Pursuant to the Scheduling Order issued on October 13, 2004, the deadline to file responses to dispositive motions was March 25, 2005.

Statement of Material Facts, and supported by Defendants' written stipulation, Shytles deposition and Plaintiff's deposition, are:

(1) GBS and Shytles attempted to collect consumer debts on 450 occasions for 4 separate creditors in the two years before this suit was filed. Specifically, from January 28, 2002, through January 28, 2004, GBS and Shytles (a) filed 133 lawsuits and sent 29 demand letters on behalf of American Honda Finance Corporation, (b) filed 46 lawsuits and mailed 239 demand letters on behalf of Aqua Finance, (c) filed 2 lawsuits for The Oaks Bank & Trust Company, and (d) filed 1 lawsuit for CU Recovery, Inc. All of the debts were consumer "debts" as that term is defined in 15 U.S.C. § 1692a(5).

(2) Shytles expended about 25% of his time during the 2 years prior to the filing of this suit engaged in consumer debt collection, and the 182 identified collection suits filed in the two years prior to this suit represented ⅓ to ½ of lawsuits that he filed in that time period.

(3) Demand letters sent by Shytles usually contain written notices required by the FDCPA.

(4) Shytles and GBS represented 4 creditors seeking to collect consumer debt in the 2-year period before the filing of this suit, and they represented 2 of those creditors during that entire 2-year period and for no less than 5 years each.

(5) GBS assigned 1 lawyer and 1 support staff to work on the consumer collection matters.

(6) GBS and Shytles filed a lawsuit in Dallas County Court at Law against Hester to collect on a debt purportedly owed to Aqua Finance for the installation of siding to the one-time home of Hester.

(7) The contract underlying Hester's purported debt to Aqua Finance had Truth-in-Lending disclosures and was denominated as a consumer credit contract.

(8) Hester signed the underlying contract with Aqua Finance in Tarrant County, and she resided in Smith County at the time suit was filed by GBS and Shytles in Dallas County Court at Law.

(9) The petition filed against Hester in Dallas County Court at Law was filed under the name of GBS by an officer of GBS, Shytles.

*Summary Judgment Standard*

Rule 56(c) of the FED. R. CIV. P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed

and all inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

*Discussion and Analysis*

FDCPA

Plaintiff alleges that GBS and Shytles violated 15 U.S.C. § 1692i(a)(2) by filing suit against her in an inappropriate venue. The statute provides that, for actions not involving real property, a debt collector shall bring any legal action on a debt against a consumer either in the judicial district where the consumer signed the contract sued upon or in the judicial district where the consumer resides at the commencement of the action. 15 U.S.C. § 1692i(a)(2).[2] For the FDCPA to apply, the obligation at issue must qualify as a "debt" as defined in 15 U.S.C. § 1962a(5), meaning that it must be an "obligation of a consumer to pay money arising out of a transaction in which the money,

---

[2]Civil liability for a violation of § 1692i is found in 15 U.S.C. § 1692k.

property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *See Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 388 (5th Cir.2002). The term "debt collector," as used in the FDCPA, includes, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

In this case, suit was filed against Plaintiff to collect on a debt that arose out of a contract between Plaintiff and Aqua Finance to fund the installation of siding on her home. Plaintiff, as a consumer, incurred the obligation to pay Aqua Finance for personal, family or household purposes. As such, the obligation forming the basis of the state court action filed against Plaintiff was a "debt" as defined by the FDCPA. 15 U.S.C. § 1962a(5).

Next, it must be determined whether the action to collect on the debt was filed in a proper "judicial district or similar legal entity" as required by 15 U.S.C. § 1692i(a)(2). It is undisputed that the underlying lawsuit was not filed in the county where the contract was signed or where Plaintiff resided. Plaintiff signed the contract in Tarrant County, Texas, and resided in Smith County, Texas, when the underlying lawsuit was filed. The suit was filed in a Dallas County Court at Law. The term "judicial district or similar legal entity" is not defined in the FDCPA. The issue has not been addressed in this Circuit, however other federal courts have determined that the term "judicial district or similar legal entity," as used in the FDCPA, refers to state rather than federal judicial districts. *See Newsom v. Friedman*, 76 F.3d 813 (7th Cir.1996); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir.1994); *Dutton v. Wolhar*, 809 F.Supp. 1130 (D. Del. 1992). These findings are consistent with the purpose of 15 U.S.C. § 1962i, which is to prevent debt collectors from burdening

consumers by filing collection suits far from their residences. *Dutton*, 809 F.Supp. at 1139 (citing S.Rep. No. 382, 95th Cong. 1st Sess. 5 reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699). Federal districts are by nature larger than the divisions provided on the state level. In Texas, the district and county courts are divided by county. *See* Tex.R.Civ.P. 86; Tex. Civ. Prac. & Rem. Code § 15.002. Indeed, Texas law provides that the proper venue for suits to collect on debts and consumer debts is where the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract. *See* Tex. Civ. Prac. & Rem. Code § 15.035(b) and Tex. Bus. & Com. Code § 17.46(b)(23). The undersigned is unaware of any case finding that the term "judicial district or similar legal entity," as used in the FDCPA means anything other than the applicable county court. Defendants have not argued otherwise in response to the motion for partial summary judgment. The underlying suit, therefore, was not filed in the proper judicial district pursuant to 15 U.S.C. § 1692i(a)(2) because it was not filed in the county where the contract was signed or the county where Plaintiff resided when suit was filed.

Finally, it must be determined whether GBS and Shytles are "debt collectors" for purposes of the FDCPA. By definition, they are debt collectors if they regularly collect or attempt to collect consumer debts owed to another. 15 U.S.C. § 1692a(6). The FDCPA applies to attorneys who regularly engage in consumer debt collection activity, including litigation, on behalf of a creditor client. *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489 (1995); *Garrett v. Derbes*, 110 F.3d 317 (5th Cir.1997). "[A] person may regularly render debt collection services, even if these services are not the principal purpose of his business." *Garrett*, 110 F.3d at 318. There is no bright line rule for determining when an attorney or law firm "regularly" engages in debt collection services. Rather,

a determination must be made on a case-by-case basis.[3] The legislative history of 15 U.S.C. § 1692a(6) reflects that "[t]he requirement that debt collection be done 'regularly' would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business." S.Rep. No. 95-382, 95th Cong. 1st Sess. 1977.

It is undisputed in this case that, in the two years preceding this lawsuit, GBS and Shytles filed 182 lawsuits and sent 268 demand letters on behalf of four creditor clients. These consumer debt collection activities accounted for approximately 25% of Shytles' professional time during that time period and represented ⅓ to ½ of the lawsuits that he filed during that time period. The firm, GBS, had one attorney and one staff person assigned to work on consumer collection matters. As previously stated, GBS and Shytles did not file a response to the motion for partial summary judgment and, therefore, have not disputed that they regularly engaged in consumer debt collection. The undersigned finds that GBS and Shytles collected consumer debts in the regular course of business. Indeed, as much as half of the lawsuits filed by Shytles during a 2-year period were for the collection of consumer debts and he spent one-fourth of his time on consumer debt collection activities. Given these facts, GBS and Shytles meet the definition of a "debt collector" under the FDCPA.

---

[3]Decisions on this issue have been wide-ranging. *Compare, e.g., Garrett*, 110 F.3d at 318 (an attorney attempting to collect 639 debts owed another during a nine-month period "regularly" attempts to collect debts owed another and is a "debt collector"); *Ditty v. CheckRite, Ltd., Inc.,* 973 F.Supp. 1320, 1336 (D.Utah 1997) (attorney liable as a debt collector where debt collection represented one third to one half of firm's activities); *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 322 (E.D.Mich.1992) (attorney with large corporate client was a debt collector even though debt collection only represented 4% of the firm's activity); *Nance v. Petty, Livingston, Dawson & Devening*, 881 F.Supp. 223, 225 (W.D.Va.1994) (attorneys not debt collectors where 0.61% of partner's practice and 1.07% of firm's cases involved debt collection); *Mertes v. Devitt*, 734 F.Supp. 872, 873-74 (W.D.Wis.1990) (attorney not a debt collector where he averaged 2 debt collection matters per year, and debt collection comprised less than one percent of his practice);

In sum, GBS and Shytles, acting as debt collectors as contemplated by the FDCPA, filed an action against Plaintiff, a consumer, to collect on a consumer debt in an improper venue pursuant to 15 U.S.C. § 1692i(a)(2). There are no disputed issues of material fact and Plaintiff is entitled to judgment as a matter of law as to the liability of GBS and Shytles on her FDCPA claim.

DTPA

Plaintiff additionally seeks relief against the creditor, Aqua Finance, pursuant to the DTPA, which provides similar venue requirements for the collection of consumer debts as the FDCPA. Pursuant to the DTPA, "false, misleading, or deceptive acts or practices" includes, "filing suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household, or agricultural use in any county other than in the county in which the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract . . ." Tex. Bus. & Com. Code § 17.46(b)(23). The Texas Supreme Court has held that § 17.46(b) provides a remedy at law for damages incurred because of a deceptive act. *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980). As previously established, the underlying lawsuit filed against Plaintiff to collect on the consumer debt owed to Aqua Finance was not filed in the county where she resided at the time the suit was filed or in the county where she signed the contract. As the creditor, the lawsuit was filed by Aqua Finance. Under these facts, Plaintiff has established a violation of the DTPA. There are no disputed issues of material fact and Plaintiff is entitled to judgment as a matter of law.

For the above reasons, the undersigned finds that Plaintiff's Motion for Partial Summary Judgment should be granted   Plaintiff is entitled to judgment on the issue of liability as to both her

FDCPA claim and her DTPA claim, leaving the issue of damages for trial and the issue of attorney's fees and costs for post-judgment consideration.

### Recommendation

In light of the foregoing, it is recommended that Plaintiff's Motion for Partial Summary Judgment (docket #50) be granted and that an order be entered finding that, as a matter of law, Graham, Bright & Smith and R. Spencer Shytles are liable to Plaintiff for a violation 15 U.S.C. § 1692i(a)(2) and that Aqua Finance, Inc. is liable to Plaintiff for a violation of Tex. Bus. & Com. Code § 17.46(b)(23).

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So **ORDERED** and **SIGNED** this  **1**   day of **April, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE